IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAMAL TAIT, DY-8544,  )
    Petitioner,  )
                                          )
      v.  )  2:09-cv-1603
                                          )
SUPT. WALSH, et al.,  )
    Respondents.  )

Memorandum and Order

Mitchell, M.J.:

Kamal Tait has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Tait is presently incarcerated at the State Correctional Institution at Dallas serving a twenty-eight and a half to fifty-seven year sentence imposed following his conviction by a jury of third degree murder, accidents involving death and personal injury, homicide by vehicle, fleeing or attempting to elude police, possessing a firearm without a license, recklessly endangering another person, simple assault, persons not to possess firearms, driving under the influence of alcohol or a controlled substance, homicide by vehicle while driving under the influence and several summary offense. This sentence was imposed on January 13, 2000.[1]

An appeal was taken to the Superior Court in which the issues presented were:

I. Whether the evidence was insufficient to sustain a finding of malice, an element of third degree murder.

---

[1] See: Petition at ¶¶ 1-6.

> II. Whether the trial court erred in allowing testimony regarding possible prior bad acts committed by Mr. Tait, which were admitted for no purpose other than to show his propensity or character for such conduct. Alternatively, counsel was ineffective for failing to request a cautionary instruction.[2]

On November 1, 2001, the judgment of sentence was affirmed.[3] These same issues were raised in a petition for allowance of appeal to the Pennsylvania Supreme Court[4] and leave to appeal was denied by the Pennsylvania Supreme Court on May 29, 2002.[5]

On September 24, 2002, Tait filed a pro-se post-conviction petition and a counseled amended petition was subsequently filed.[6] That petition was dismissed on March 14, 2007.[7]

An appeal was taken to the Superior Court in which the issues presented were:

> 1. Was it error for the PCRA Court to find all of the petitioner's issues were waived for failure to timely file a statement pursuant to Pa.R.A.P. 1925(b)?
>
> 2. Was it error for the PCRA Court to dismiss the amended petition after the petitioner pled and proved grounds for relief?[8]

On November 17, 2008, the denial of post conviction relief was affirmed.[9]

A petition for allowance of appeal by the Pennsylvania Supreme Court was filed in which the sole issue presented was:

---

[2] See: Exhibit 4 to the answer.

[3] See: Exhibit 6 to the answer.

[4] See: Exhibit 8 to the answer.

[5] See: Exhibit 7 to the answer.

[6] See: Exhibit 9 to the answer.

[7] See: Exhibit 11 to the answer at page 2.

[8] See: Exhibit 11 to the answer.

[9] See: Exhibit 13 to the answer.

1. Whether trial counsel and appellate counsel were ineffective for failing to litigate and preserve a claim that a change of venue was necessary to protect Petitioner's right to a fair trial where the pretrial publicity was inherently and permanently prejudicial?[10]

On April 29, 2009, leave to appeal was denied.[11]

In the instant petition execute on November 30, 2009, Tait contends he is entitled to relief on the following grounds:

1. The D.A. never signed, certified and filed the 3rd degree murder form and counsel abandoned the claim

2. The black defendant was charged with killing a white child and was forced into an all white jury; the Court knowingly and intentionally lied (claimed the voir dire was not recorded); the defendant's mother found and paid for "part" of the voir dire transcript.

3. Layered claim of ineffective assistance of counsels.[12]

The background to this prosecution is set forth in summary form in the November 1, 2001 Memorandum of the Superior Court:

On June 22, 1998, [appellant] while driving his green Chevy Blazer, picked up fourteen year old Eric Stemmerick and sixteen year old Tim Zotter on the Northside section of the City of Pittsburgh. They canvassed the area for several hours looking for someone who would sell them marijuana. As the evening approached, [appellant] picked up another young man named Joe Morris. During this ride [appellant] was smoking marijuana wrapped in what is called a "blunt."

Eventually, [appellant] navigated his vehicle into Avalon borough. As he drove down Spruce Run Road, a street with a posted fifteen mile per hour speed limit, Richard Rosell, a resident of the area, hollered at [appellant] to slow down, as

---

[10] See: Exhibit 15 to the answer.

[11] See: Exhibit 14 to the answer.

[12] See: Petition at ¶ 12. We also note that the petition filed here is 179 pages long and appears to be a random compilation of appellate briefs, court documents and transcripts and various other matters pertaining to Tait's conviction.

children were playing in the area. [Appellant] engaged in a verbal confrontation with Rosell, and subsequently exited his vehicle and pointed a thirty-eight caliber automatic pistol at Rosell. Rosell's father, Lawrence Rosell, who had arrived at the scene, was able to calm the situation at this point. [Appellant] put his gun away, reentered his car and sped away.

Following the incident the Rosells telephoned the Avalon Borough police, informing them of [appellant's] conduct and providing his license plate number. The identity of the last occupant of the vehicle, Joe Marris, was also made known to the police.

Officer James Dunham recognized Morris' name, and began searching for [appellant's] vehicle by proceeding toward Morris' home in Bellevue Borough. Officer Dunham observed a vehicle matching the description of [appellant's] vehicle, and confirmed its identity by reviewing the license place.

Two Bellevue Borough police officers, Donald Mason and Richard Ball, proceeded to Officer Dunham's location. Once Mason and Ball had provided backup, Officer Dunham activated his lights and siren in an attempt to stop [appellant]. Instead of stopping, [appellant] began a flight from the police that would ultimately result in the death of Raymond Michelotti, a seven year old boy who was playing on the street near his home, approximately two miles from the point where the police first tried to stop [appellant].

As he operated his vehicle at a high rate of speed from Bellevue Borough to the North side [appellant] ignored at least ten stop signs, several watch children signs, a red light, and he made an illegal left turn. [Appellant] also ignored pleas from his passengers, Zotter and Stemmerick, to terminate his flight.

[Appellant's] vehicle became airborne as it crested a hill on Gass Avenue. At that time Raymond Michelotti was riding his bicycle in the middle of Gass and Beckham Avenues. A neighbor tried to alert the boy to the oncoming vehicle but there was insufficient time for the boy to react. [Appellant's] vehicle struck the youth, throwing him some one hundred sixty feet down Gass Avenue. The injuries sustained by Michelotti from the impact resulted in his death shortly after the incident occurred. [Appellant] and the other vehicle occupants fled the area but were apprehended within a short time and distance away.[13]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant

---

[13] See: Exhibit 6 to the answer at pp.2-4 (quoting the trial court opinion).

to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Bronshtein v. Horn, 404 F.3d 700, 723 (3d Cir.2005), cert .denied 546 U.S. 1208 (2006), the Court held:

> We must thus decide whether the state supreme court's "adjudication of the claim ... resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States...
>
> A state court adjudication is "contrary to" Supreme Court precedent if it results from the application of "a rule that contradicts the governing law set forth" by the Supreme Court or is inconsistent with Supreme Court decision in a case involving "materially indistinguishable" facts ... "A state court decision fails the 'unreasonable application' prong only 'if the court identifies the correct governing rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme court's precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply...(citations omitted).

In the instant case, it would appear that the petitioner has failed to raise either his first or second issues in the appellate courts of the Commonwealth. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the petitioner has defaulted the available state court remedies on these issues and no further consideration of these issues is warranted here .

The petitioner's third issue concerning the "layered claim of ineffective assistance of counsel" was at least raised in some form in his appeal from the denial of post-conviction relief

and is appropriately before this Court. Specifically, in that regard the Superior court stated,

> On appeal, Tait raised the following claim:
>
> Did the PCRA Court err in dismissing Tait's amended Petition where Tait raised numerous claims of ineffectiveness of trial and appellate counsel?
>
> In his first claim, Tait contends that his trial counsel was ineffective for failing to file a post-sentence motion seeking the modification of his sentence before the trial court.
>
> In his second claim, Tait contends that his trial counsel was ineffective for inadequately advising him as to the advantages and disadvantages of testifying on his own behalf at trial.
>
> In his third claim, Tait contends that his trial counsel was ineffective for failing to request a change of venue.[14]

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. The <u>Strickland</u> test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice

---

[14] See: Exhibit 13 to the answer.

prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

At the post-conviction hearing held on November 21, 2006,[15] Patrick Thomassey, the petitioner's trial counsel testified that he had engaged in the practice of criminal law for thirty-one years (TT.15); that he represented the petitioner at trial (TT.16); that he did not seek a change of venue but would have done so if it became impossible to seat a local jury (TT.17, 18, 31); that he does not believe jurors decide cases on the basis of race and that he would have objected if the prosecution employed its challenges to the venire in a racially discriminatory manner (TT.19, 27); that he discussed with the petitioner whether or not the petitioner should testify at trial and they decided that he should not because the petitioner sought to place the blame on the irresponsibility of the police and by testifying his character could become an issue (TT.24, 29); that he did not call character witnesses on behalf of petitioner because of fear of placing petitioner's character in evidence (TT.25); that even if he had not been fired he would not have challenged the sentence since it was a legal sentence (TT.25); that his trial strategy was that while there was no defense to the homicide, he argued that the petitioner was not guilty of third degree murder (TT.28) and that

---

[15] All record references to the testimony at that hearing at marked "TT".

the sole issue at trial was whether the petitioner's recklessness in fleeing was so egregious as to constitute malice and thus third degree murder as opposed to involuntary manslaughter (TT.28).

At that same hearing, John Elash, petitioner's appellate counsel (TT.4) testified that he did not raise the jury composition issue since it was very weak (TT.5,11); that he did not appeal the length of the sentence because there was no basis for successfully arguing that issue (TT.6); that he did not believe a transcript of the voir dire proceedings existed (TT.7), and that his belief is that on appeal, a petitioner should focus on those issues with the greatest likelihood of success rather than taking a shot-gun approach (TT.10).

The petitioner also testified at the hearing. He testified that he met with trial counsel several times prior to trial (TT.36); that he discussed whether or not he should testify with counsel and informed the court that he did not desire to testify because of fear of introducing his prior record (TT. 38-40); that he did discuss a possible change of venue with counsel who related that he would raise the issue (TT.40-41); that the final panel from which the jury was selected did not have any African Americans (TT.41,42,47); that he never intentionally hurt the victim (TT.45,48) and that he understood that he was not charged with an intentional homicide (TT.48).

Thus, the record clearly demonstrates that petitioner was represented by highly experienced trial and appellate counsel; that since there was no question that petitioner had caused the death of the victim the only possible strategy to employ was to attempt to demonstrate that he lacked the requisite recklessness to support a murder conviction; that there was no basis for challenging the jury composition, nor to seek a modification of the legal sentence, and that finally, the decision that the petitioner not testify at trial was one of trial strategy. Since well reasoned strategic decisions of counsel do not generally provide a basis supporting a claim of

9

ineffectiveness, Rolan v. Vaughn, 445 F.3d 671 (3rd Cir.2006), it cannot be concluded that the performance of trial and appellate counsel was deficient.

Accordingly, there is no showing that the state court adjudication was contrary to clearly established Federal law, and the substantive claims of the petitioner are meritless. For this reason, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 1st day of July, 2010, for the reasons set forth in the foregoing Memorandum, the petition of Kamal Tait for a writ of habeas corpus is dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

s/ Robert C. Mitchell<br>
United States Magistrate Judge